**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WILLIAM SANDBANK, | ) |
| Plaintiff, | ) |
| v. | ) 3:12-cv-539-RCJ-WGC |
| WASHOE COUNTY SCHOOL DISTRICT, et al., | ) **ORDER** |
| Defendants. | ) |

Currently before the Court is Defendants' Motion to Dismiss the Complaint (#13).

**BACKGROUND**

In October 2012, Plaintiff William Sandbank, counseled, sued Defendants Washoe County School District ("WCSD"), Rick[1] Harris, Richard C. Gitthens, Jr., Yves Souto, Juston Boston, Eric Zimmerman, and Jeffrey Lehmann (collectively "Defendants") in federal court based on federal question jurisdiction. (Compl. (#1) at 1, 3). Plaintiff, Gitthens, Souto, Boston, Zimmerman, and Lehmann were employees of the WCSD. (*Id.* at 2). Harris, an employee of the WCSD, was Plaintiff's supervisor. (*Id.*).

The complaint alleged the following. (*Id.* at 3). Plaintiff had been employed by the WCSD since April 14, 1997, and had been promoted from warehouseman to warehouse supervisor. (*Id.* at 3). On October 14, 2010, three warehousemen under Plaintiff's supervision had gotten into a disagreement at the job site. (*Id.*). Two of those individuals left work early as a result of the disagreement, including an individual named Lohny Elmore, a non-party.

---

[1] Plaintiff sued "Rich Harris" but Defendants assert that his name is "Rick Harris." (*See* Mot. to Dismiss (#13) at 1 n.1).

1  (*Id.*). Elmore did not show up to work the following day, Friday, October 15, 2010. (*Id.*). Over
2  the weekend, Elmore had called Plaintiff at home to complain about the disagreement that had
3  occurred on October 14th and about other employees Elmore had problems with. (*Id.*).
4  Plaintiff believed Elmore was under the influence of alcohol or some other substance during
5  those calls. (*Id.*). Plaintiff had listened to Elmore's complaints and had advised Elmore to let
6  it go and finish out his time with the WCSD since he was retiring in December 2010. (*Id.*). As
7  the weekend progressed, Elmore continued to call Plaintiff in a "worsening state of inebriation."
8  (*Id.*). Elmore began making threats to kill specific WCSD employees and "began to become
9  more aggressive, threatening and obnoxious in his conversations with Plaintiff" such that
10 Plaintiff stopped answering Elmore's telephone calls. (*Id.*). Elmore left threatening messages
11 on Plaintiff's telephone. (*Id.*).

12         The complaint alleged the following. (*Id.* at 4). Elmore did not return to work on
13 Monday, October 18, 2010. (*Id.*). Plaintiff notified Harris, his supervisor, about what had
14 occurred over the weekend and Plaintiff stated his concern as to what would happen when
15 Elmore did return to work because Elmore had made death threats against various employees
16 to Plaintiff over the weekend. (*Id.*). Harris stated that they would call Elmore into a meeting
17 the next day and try to have Elmore retire immediately rather than at his scheduled retirement
18 in December. (*Id.*). Plaintiff agreed and advised his employees to delay the time that they
19 would come into work the next day to avoid any confrontation. (*Id.*). Neither Harris nor the
20 WCSD had attempted to contact Elmore at his home to diffuse the situation or contact any
21 police departments regarding Elmore's death threats. (*Id.*).

22         The complaint alleged the following. (*Id.*). At approximately 6:10pm that same day,
23 Elmore, intoxicated, went to Plaintiff's home and shot through Plaintiff's front door at the family
24 dog. (*Id.*). Elmore then attempted to enter the back yard where Plaintiff and his fiancee were
25 located. (*Id.*). When Elmore could not access the rear yard, he went to the front of the house
26 and "shot up the three cars in Plaintiff's driveway, and began shooting through the windows
27 of Plaintiff's home, all the time yelling that he was going to kill Plaintiff." (*Id.* ). Plaintiff, his
28 fiancee, and her son took cover in one of the hallways. (*Id.*). The police came and arrested

Elmore. (*Id.*). Plaintiff contacted Harris and told him what had happened. (*Id.*). Nobody from the WCSD officially called Plaintiff after the attack to offer any guidance of assistance. (*Id.*).

The complaint alleged the following. (*Id.* at 5). Plaintiff had taken the rest of that week off from work. (*Id.*). During that time, he realized he was "fearful and extremely stressed" and started counseling sessions where he was diagnosed with severe Post Traumatic Stress Disorder ("PTSD"). (*Id.*). After realizing that he could not afford the cost of counseling on his own, he asked Risk Management at the WCSD for assistance since none had been offered to him. (*Id.*). Risk Management told him that he would have to file a worker's compensation claim. (*Id.* ). The WCSD denied his worker's compensation claim because the incident "was not work related." (*Id.*). Plaintiff appealed but was told that "if the incident did not happen on WCSD property, it was not work related." (*Id.*). Plaintiff continued his counseling for severe PTSD but cut back on sessions due to cost. (*Id.*). Plaintiff's counselor suggested that he take more time off from work to recover from the incident, but "Plaintiff did not feel safe in his own home after the attack and spent as little time there as possible." (*Id.*).

The complaint alleged the following. (*Id.*). On January 26, 2012, Elmore was sentenced. (*Id.*). After sentencing, Elmore's lawyer entered into evidence a letter written and signed by Defendants Gitthens, Souto, Boston, and Zimmerman which stated that "Plaintiff had made working conditions unbearable and that the WCSD had been aware of the conditions shortly after the October 18, 2010 incident in a performance review submitted by warehouse staff." (*Id.*). Plaintiff "felt totally blind-sided and ambushed." (*Id.*). As a result of the October 18, 2010 incident and Elmore's sentencing hearing, Plaintiiff took more time off from his job. (*Id.*). WCSD representatives contacted Plaintiff and asked when he would be returning to work. (*Id.*). Plaintiff asked what was happening with the individuals who wrote the letter for Elmore's sentencing. (*Id.* at 5-6). The representatives told Plaintiff that the WCSD could do nothing to Gitthens, Souto, Boston, and Zimmerman because they had been exercising their right of free speech. (*Id.* at 6). The WCSD "demanded that Plaintiff return to work" in the hostile environment. (*Id.*).

The complaint alleged the following. (*Id.*). Plaintiff returned to work but was constantly

subjected to insubordination by Gitthens, Souto, Boston, and Zimmerman. (*Id.*). After two days of hostility and harassment, Plaintiff expressed his frustration to his direct supervisor, Lehmann. (*Id.*). There was no intervention by his supervisors. (*Id.*). Plaintiff told Lehmann that "he felt like he needed to go back on leave because 'he felt like slitting Rick's[2] throat.'" (*Id.*). Lehmann told Plaintiff that he would have to tell his supervisor about that remark and Plaintiff responded, "I hope you do tell someone" and that he wished that someone would have done something when he told them about Elmore. (*Id.*). Lehmann told Harris about his conversation with Plaintiff and Harris informed the school police. (*Id.*). The school police informed Gitthens of the statement and Gitthens obtained a restraining order against Plaintiff. (*Id.*). As a result of the restraining order, Plaintiff was given a due process hearing and then lost his position at the warehouse, was fined ten days pay, and put on probation. (*Id.*).

The complaint alleged the following. (*Id.*). Defendants designed their own protocol to deal with Plaintiff. (*Id.*). Under this protocol, any employee who felt threatened by Plaintiff at Plaintiff's reassigned warehouse had to call ahead so Plaintiff could leave the area. (*Id.* at 6-7). The protocol required Plaintiff to notify the school police and his supervisors if he had to go to the administration building and to instruct employees that if they felt threatened by him they were to call the police. (*Id.* at 7). Since his due process hearing, Plaintiff had been "shuffled around from one position to another" and had experienced continued harassment by Defendants. (*Id.*). Gitthens and others came to Plaintiff's reassigned warehouse in order to force Plaintiff to leave his place of employment so as not to violate Gitthens' restraining order and the WCSD's instructions regarding that order. (*Id.*). Plaintiff was harassed because the WCSD had reassigned him to custodial work at a school, as a bus driver trainee, and as an equipment set-up person for transportation within the past nine months. (*Id.*). Defendants retaliated against him for his "complaints of being treated unfairly and from suffering the effects of [PTSD] due to Defendants' negligence in not attempting to address" Elmore's behavior before he attacked Plaintiff. (*Id.*).

---

[2] Based on the complaint, "Rick" appears to be Defendant Richard C. Gitthens, Jr.

4

The complaint alleged five causes of action. (*Id.* at 8-13). In the first cause of action, Plaintiff alleged hostile and/or offensive work environment pursuant to Title VII against all Defendants. (*Id.* at 8-10). In the second cause of action, Plaintiff alleged an equal protection violation pursuant to 42 U.S.C. § 1983 because he was singled out for asking for additional time off work to deal with his PTSD and then set up to look like an unstable individual. (*Id.* at 11). Defendants failed to address Elmore's death threats but then denied Plaintiff the same treatment. (*Id.*). In the third cause of action, Plaintiff alleged conspiracy, pursuant to 42 U.S.C. § 1985, to deny Plaintiff his rights to a safe, fair, and non-hostile work environment. (*Id.* at 12). In the fourth cause of action, Plaintiff alleged negligent infliction of emotional distress because he could not sleep and had suffered emotional and physical distress which had negatively impacted his health and ability to enjoy life. (*Id.* at 13). In the fifth cause of action, Plaintiff alleged intentional infliction of emotional distress. (*Id.*). Plaintiff sought compensatory damages, special damages in excess of $75,000, general damages in excess of $75,000, attorney's fees, costs, disbursements, and prejudgement interest. (*Id.* at 14).

The pending motion now follows.

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant

is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## DISCUSSION

Defendants file a motion to dismiss the complaint in its entirety pursuant to Rule 12(b)(6). (Mot. to Dismiss (#13) at 2). Defendants argue that Plaintiff fails to allege a Title VII hostile/offensive work environment claim because he does not allege any facts that place him

in a protected Title VII category. (*Id.* at 5). Defendants assert that Plaintiff also fails to allege a protected activity and a casually-related adverse employment action. (*Id.* at 6). Defendants argue that Plaintiff has not filed a charged with the EEOC and has not received a right to sue letter. (*Id.*). Defendants assert that Plaintiff has failed to allege a § 1983 equal protection claim because Plaintiff has not alleged membership in a protected class. (*Id.* at 8). Defendants also argue that Plaintiff failed to allege a § 1983 equal protection claim against WCSD because Plaintiff has not alleged that the individual defendants' actions or inactions were done pursuant to WCSD policy or customs. (*Id.* at 10). Defendants contend that Plaintiff fails to allege a § 1985(3) claim because Plaintiff failed to allege that he is a member of any class that comes within the statute's protections. (*Id.* at 11-12). Defendants assert that Plaintiff's NEID and IIED claims must be dismissed because the exclusive remedy for such acts lie under NRS § 613.330. (*Id.* at 12). Defendants also argue that Plaintiff's NEID claim fails because he is not a bystander. (*Id.* at 15). Defendants assert that Plaintiff's IIED claim fails because allegations are insufficient to state a cognizable IIED claim. (*Id.* at 16). Defendants assert that if the Court dismisses Plaintiff's first, second, and third claims, it should decline supplemental jurisdiction over the fourth and fifth claims. (*Id.* at 18).

In response, Plaintiff, counseled, argues that he states a Title VII claim for retaliation because being an employee of the WCSD "in and of itself, is a protected activity." (Opp'n to Mot. to Dismiss (#17) at 6). He also asserts that he informed Defendants of Elmore's impending threats, that the Elmore's attack was a materially adverse action, and that Defendants never contacted him after the attack to offer guidance or assistance. (*Id.*). Plaintiff asserts that he states a 42 U.S.C. § 1983 claim because hostile work environments are constitutional violations and reasonable officials would have known that transferring him treated him differently than similarly situated employees. (*Id.* at 7). Plaintiff argues that he states a 42 U.S.C. § 1985 claim because he argues that his PTSD is a disability under the Americans with Disabilities Act ("ADA") and that he must be reasonably accommodated. (*Id.* at 8). Plaintiff contends that NRS § 613.330 does not preempt his tort claims and that his claims are cognizable. (*Id.* at 8-9). Plaintiff asserts that he should be given leave to amend

7

because his claims have merit. (*Id.* at 10).

In reply, Defendants argue that Plaintiff tries to add additional facts in his opposition that are not included in the complaint which is improper. (Reply to Mot. to Dismiss (#19) at 3). Defendants assert that Plaintiff's failure to respond to portions of their motion to dismiss constitutes consent. (*Id.*). Defendants argue that Plaintiff's opposition fails to show that the complaint sufficiently alleges a Title VII claim because there are no allegations that Plaintiff is in a protected category. (*Id.* at 4). Defendants also assert that Plaintiff has not demonstrated that he opposed an employment practice made unlawful by Title VII. (*Id.* at 5). Defendants assert that Plaintiff cannot create a new claim for the ADA in order to state a 42 U.S.C. § 1985 claim. (*Id.*).

**I.    First Claim: Hostile and/or Offensive Work Environment Pursuant to Title VII**

Under Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "This prohibition encompasses the creation of a hostile work environment, which violates Title VII's guarantee of 'the right to work in an environment free from discriminatory intimidation, ridicule, and insult.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

In this case, Plaintiff fails to state a claim for hostile work environment under Title VII because he does not allege that the hostile work environment was a result of his race, color, religion, sex, or national origin. (*See generally* Compl. (#1)). As such, the Court dismisses the first claim for hostile work environment. Additionally, Plaintiff never addresses this issue in his response to Defendants' motion to dismiss where they clearly raise this issue. As such, the Court dismisses this cause of action without leave to amend because Plaintiff has not demonstrated that amendment would cure this deficiency.

Under Title VII, it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . to discriminate against any individual . . . because he has

8

opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  To make out a prima facie case for retaliation, Plaintiff must establish that he undertook a protected activity under Title VII, his employer subjected him to an adverse employment action, and there is a casual link between those two events.  *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003).

In this case, Plaintiff has failed to plead that he engaged in a protected activity under Title VII.  Again, Plaintiff fails to allege that his employer discriminated against anybody because of race, color, religion, sex, or national origin.  Additionally, Plaintiff fails to address this issue in his opposition to the motion to dismiss and instead incorrectly asserts that being an employee of the WCSD is a protected activity.  As such, Plaintiff fails to plead a prima facie case for Title VII retaliation and the Court dismisses the first cause of action for retaliation without leave to amend.

**II.     Second Claim:  Equal Protection Violation Pursuant to 42 U.S.C. § 1983**

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998)).

A local government entity is liable under § 1983 when action pursuant to official municipal policy of some nature causes a constitutional tort.  *Lee*, 250 F.3d at 681.  A local entity may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights.  *Id*.  However, the custom or policy of inaction must be the result of conscious or deliberate choice to follow a course of action made among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.  *Id*.

In this case, Plaintiff has failed to allege membership in a protected class.  Again, he

does not address this issue in his opposition to the motion to dismiss. (*See* Opp'n to Mot. to Dismiss (#17) at 7). Because Plaintiff does not allege membership in a protected class he fails to state a claim for an equal protection violation under § 1983. Additionally, Plaintiff also fails to state a § 1983 claim against the WCSD because he fails to identify a custom or policy that violated his equal protection rights as a member of a protected class. As such, the Court dismisses this claim without leave to amend.

### III.     Third Claim: Conspiracy Pursuant to 42 U.S.C. § 1985

Title 42 U.S.C. § 1985(3) states the following:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). To state a cause of action under § 1985(3), a complaint must allege: "(1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). In *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L. Ed. 2d 957 (1979), the U.S. Supreme Court held that "§ 1985(3) may not be invoked to redress violations of Title VII." *Id*. at 378, 99 S.Ct. at 2352.

In this case, Plaintiff alleges that his § 1985(3) claim is based on "his rights to a safe, fair and non-hostile work environment," "a protocol that singles out Plaintiff and unjustifiably treats him in a manner different from other employees," and transferring him "from job position to job position without justification." (*See* Compl. (#1) at 12). The Court finds that these are the same allegations that Plaintiff used in his Title VII hostile work environment and retaliation claims. As such, the Court finds that Plaintiff is attempting to use § 1985(3) to redress

violations of Title VII and the Court dismisses this cause of action without leave to amend.

**IV.   State Law Claims**

Pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction over a claim if the district court dismisses all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). In this case, the Court has dismissed all of the federal question claims without leave to amend. The Court now declines to exercise supplemental jurisdiction over Plaintiff's state law claims for negligent infliction of emotional distress and intentional infliction of emotional distress and dismisses those causes of action for lack of jurisdiction. The Court notes that there is no diversity jurisdiction in this case because both Plaintiff and Defendants are citizens of Nevada. (*See* Compl. (#1) at 1-2); 28 U.S.C. § 1332(a)(1).

Accordingly, the Court grants Defendants' motion to dismiss (#13) in its entirety.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' Motion to Dismiss the Complaint (#13) is GRANTED in its entirety with prejudice. The Court dismisses the first, second, and third causes of action for failure to state a claim under Fed. R. Civ. P. 12(b)(6) without leave to amend. The Court dismisses the fourth and fifth causes of action for lack of jurisdiction because the Court declines to exercise supplemental jurisdiction over these state law claims.

DATED: This 28th day of May, 2013.

_____
United States District Judge